United States District Court
Southern District of Texas
**ENTERED**
August 01, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JASON BAILEY, M.D., P.A., *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Case No. 4:22-CV-04078 |
| | § | |
| UNITEDHEALTHCARE | § | |
| INSURANCE COMPANY, | § | |
| *Defendant.* | § | |

## JUDGE PALERMO'S REPORT & RECOMMENDATION

This case arises under the Employee Retirement Income Security Act ("ERISA").[1] Pending before the Court are cross motions for summary judgment, Def.'s Mot. Summ. J., ECF No. 21; Pls.' Mot. Summ. J., ECF No. 22. After thoroughly considering the briefing,[2] the evidence, and the applicable law, the Court concludes that Plaintiffs Jason Bailey, M.D., P.A.'s ("Dr. Bailey"), and the estate of Bridget Sullivan's ("patient" or "member") motion, ECF No. 22, should be denied, and Defendant UnitedHealthcare Insurance Co.'s ("UHIC") motion, ECF No. 21, should be granted.

## I.   BACKGROUND

ERISA governs two group policies ("plan") UHIC issued to cover health

---

[1] The district judge to whom this case is assigned referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* Order, ECF No. 27.

[2] The Court extended the parties' deadlines to respond. Order, ECF No. 24. Defendant timely filed a response, ECF No. 25, while Plaintiffs filed their two-page response 10 days late, ECF No. 26.

insurance benefits for members during the relevant period.[3] R. 1-189, 191-389. The plan prescribes different reimbursement rates for services received from out-of-network medical providers. R. 38-42. In non-emergencies, allowed amounts for out-of-network providers are determined based on negotiated rates between UHIC and the provider or 110% of Medicare rates for similar services. R. 39.[4] However, when out-of-network providers render "Emergency Health Care Services":

> the Allowed Amount is a rate agreed upon by the out-of-Network provider or determined based upon the higher of:
>
> • The usual, reasonable or customary amount;
>
> • The median amount negotiated with Network providers for the same service; or
>
> • 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market.

R. 40 (italics omitted). The plan further defines "Emergency Health Care Services" in an emergency as:

> • A medical screening exam (as required under section 1867 of the

---

[3] UHIC attaches the administrative record as an exhibit to its cross-motion, split into several sealed attachments. *See* ECF Nos. 21-1, 21-2, 21-3, 21-4, 21-5, 21-6. The Court uses "R." citations for references to the 633-page administrative record. UHIC further supplies a summary of the relevant undisputed facts. ECF No. 21 at 2-6. Plaintiffs' cross-motion contains no factual summary and notes no factual disputes. *See* ECF No. 22. Plaintiffs do not dispute the completeness of record or cite any evidence outside that record. The Court thus accepts those facts as undisputed.

[4] The record contains both the 2018 and 2019 versions of the plan. R. 1-206, 208-389. UHIC states that while the language of the 2018 and 2019 plans are not identical, the provisions at issue here are identical. ECF No. 21 at 2 n.2. Plaintiffs do not dispute this representation and largely rely on the same cited provisions. *See* ECF No. 22 at 3-4. In the absence of any apparent dispute, the Court accepts the parties' representations that the cited provisions apply to Plaintiffs' claims.

Social Security Act, 42 U.S.C. 1395dd) that is within the capability of the emergency department of a Hospital, including ancillary services routinely available to the emergency department to evaluate such Emergency, and

- Such further medical exam and treatment, to the extent they are within the capabilities of the staff and facilities available at the Hospital, as are required under section 1867 of the Social Security Act (42 U.S.C. 1395dd(e)(3)).

R. 120-21 (italics omitted). In the event of an adverse benefits determination, the plan informs members that: "Your first appeal request must be submitted to us within 180 days after you receive the denial of a pre-service request for Benefits or the claim denial." R. 131.

On or about October 1, 2018, Bridget Sullivan presented to the emergency department at North Cypress Medical Center complaining of an infection following a previous cranioplasty operation. R. 493. Dr. Bailey performed surgery to treat the patient. R. 493-94. He opened, cleaned, and reclosed the prior incision site. R. 493-94. Dr. Bailey then submitted claims totaling $54,867.21 for this surgery to UHIC. R. 391-93, 456-62. The patient requested prior authorization for a scheduled follow-up surgery with Dr. Bailey, which UHIC granted on January 11, 2019. R. 430-31. Dr. Bailey performed the follow-up surgery for scalp reconstruction on January 15, 2019. R. 565-67. Dr. Bailey submitted claims totaling $47,310.00 for this surgery. R. 397-98, 470-75.

UHIC adjudicated the claims for the initial surgery and issued an explanation

of benefits on May 20, 2019, followed by provider remittance advices on May 20 and 22, 2019, paying benefits of $5,743.70 under the plan. R. 456-62, 472-76. Dr. Bailey requested reconsideration on May 29, 2019. R. 626-31. For the follow-up surgery, UHIC ultimately paid benefits of $2,590.67. R. 469-71. Dr. Bailey did not request reconsideration of UHIC's benefits decision for the follow-up surgery.

On November 26, 2019, counsel for Dr. Bailey submitted a letter titled "First Level Member Appeal" pertaining to the initial surgery. R. 496-502. The following day, counsel submitted a "First Level Provider Appeal" for the initial surgery, R. 482-87, and for the follow-up surgery, R. 513-18. UHIC denied these purported first level appeals on December 12, 2019, for failure to include the required member authorization. R. 534-45. On January 30, 2020, Dr. Bailey submitted a "Second Level Provider Appeal" for the follow-up surgery with no new information. R. 549-53. Counsel argued the "surgery was a continuation of care from the initial surgery," and requested UHIC to "negotiate a fair reimbursement for the provider's claim." R. 552. UHIC again rejected this second level appeal for failing to include written member authorization. R. 585-89. Dr. Bailey never submitted a second level appeal for the initial surgery from October 1, 2018.

On September 28, 2022, Plaintiffs filed suit in state court, asserting various claims under Texas law. ECF No. 1-2. UHIC removed based on federal diversity

jurisdiction. ECF No. 1. Plaintiffs subsequently amended the pleadings, dropping all state law causes of action and asserting instead a single claim for plan benefits under Section 502(a)(1)(B) of ERISA. ECF No. 10 ¶¶ 34-36. After multiple extensions, the parties filed the instant cross-motions for summary judgment. ECF Nos. 21, 22.

## II.   STANDARDS OF REVIEW

### A.   ERISA Claims May Be Decided on Summary Judgment.

"Standard summary judgment rules control in ERISA cases." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quotation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying "the basis for its motion" and any portions of the record that "demonstrate the absence of a genuine issue of material fact." *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014) (quotations omitted). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Lozano v. Collier*, 98 F.4th 614, 620 (5th Cir. 2024) (quotation omitted).

Where the moving party "bears the burden of proof on an issue," such as a plaintiff or counter-plaintiff, it "must establish beyond peradventure *all* of the essential elements" for that claim to be entitled to summary judgment. *Fontenot v.*

*Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). But where the moving party does not bear the burden of proof, summary judgment is available "simply by disproving the existence of any essential element of the opposing party's claim." *Id.* The burden then shifts to the non-moving party, who must "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" *Davis*, 765 F.3d at 484 (quotations omitted). Summary judgment evidence "must be viewed in the light most favorable to the non-moving party, and reasonable inferences must be drawn in that party's favor." *Warren v. Fed. Nat'l Mortgage Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019).

**B.      The Court's Review of an ERISA Appeal is *De Novo*.**

A claimant seeking to enforce its rights under ERISA Section 502(a)(1)(B) bears "the initial burden of demonstrating entitlement to benefits under an ERISA plan." *Wegner v. Tetra Pak, Inc.*, 643 F. Supp. 3d 659, 669 (E.D. Tex. 2022) (quoting *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993)); *see also* 29 U.S.C. § 1132(a)(1)(B). The Fifth Circuit has held that ERISA plans issued in Texas are reviewed *de novo* with no deference afforded to the plan administrator's factual or legal determinations. *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 256 (5th Cir. 2018). Under that standard, "the Court must determine whether the administrator made a correct decision," while keeping in mind that the claimant "bears the burden to show by a preponderance of the evidence that she is entitled to

benefits." *Hodge v. Guardian Life Ins. Co. of Am.*, No. 4:20-CV-2088, 2021 WL 5142793, at *2 (S.D. Tex. Sept. 10, 2021), *adopted*, 2021 WL 5143886 (S.D. Tex. Nov. 3, 2021) (citations omitted). The plan administrator's benefits decision "'is not afforded deference or a presumption of correctness,' but rather the court must 'evaluate the persuasiveness of each side's case.'" *Batchelor v. Life Ins. Co. of N. Am.*, 504 F. Supp. 3d 607, 609 (S.D. Tex. 2020) (quoting *Pike v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 1018, 1029-30 (E.D. Tex. 2019)).

## III. PLAINTIFFS' MOTION SHOULD BE DENIED, AND DEFENDANT'S MOTION SHOULD BE GRANTED.

In essence, Plaintiffs' theory of the case is that UHIC impermissibly refused to reimburse Dr. Bailey for the full amount billed for both surgeries. It is undisputed that Dr. Bailey is an out-of-network provider under the plan. When emergency medical services are provided to a plan member, however, the plan administrator is required to reimburse the out-of-network provider at the higher of three options, including "the usual, reasonable or customary amount." R. 40, 247. Plaintiffs insist, without explanation, that this phrase should be interpreted to correspond with the 90th percentile of FAIR Health data's rates for the Houston area. ECF No. 10 ¶¶ 24-25. UHIC counters that it correctly adjudicated the claims, and even if it erred, Plaintiffs are not entitled to damages. The Court agrees with UHIC.

### A. Plaintiffs Fail to Carry Their Initial Burden as the Moving Party.

Plaintiffs raise two arguments in their motion for summary judgment. First,

Plaintiffs argue that UHIC improperly determined the surgeries were non-emergent without obtaining the opinion of a medical expert as ERISA regulations required. ECF No. 22 at 3-5. Second, Plaintiffs insist that the facts in the record do not support UHIC's determination under the plan. *Id.* at 6-9. Neither argument is supported by any citation to relevant authority. Plaintiffs thus fail to satisfy their initial burden of showing that they are entitled to summary judgment as a matter of law.

### 1. *ERISA regulations requiring expert medical consultation are inapplicable under these circumstances.*

Plaintiffs' first argument is that "UHIC's decision to override Dr. Bailey's medical judgment that he was providing emergency services to his own patient lacks a legally sufficient basis." ECF No. 22 at 5. Aside from portions of the administrative record, the only authority cited in support—indeed, the only legal authority cited in Plaintiffs' entire argument section—is 29 C.F.R. § 2560.503-1(h)(3)(iii). ECF No. 22 at 5. Plaintiffs insist that UHIC erred because it failed to obtain "the professional opinion of a medical expert" as required under the cited ERISA regulation. *Id.* The text of that regulation requires all group health plans to contain claims procedures which:

> Provide that, in deciding an *appeal of any adverse benefit determination* that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary *shall consult with a health care professional* who has appropriate training and experience in the field of medicine involved in the medical judgment.

29 C.F.R. § 2560.503-1(h)(3)(iii) (emphasis added). Plaintiffs cite no cases applying this provision to a plan administrator's initial determination of benefits. Indeed, Plaintiffs offer no explanation for how this regulation applies in this context.

Instead, as UHIC correctly asserts, ECF No. 25 at 12-13, that subsection is inapplicable. Subsection (h)(3)(iii) of its own terms applies only to appeals, not the initial disposition of benefit claims. *See* 29 C.F.R. § 2560.503-1(g) (requiring plan administrator to explain reasons for adverse benefit determination *inter alia*, but not mandating expert consultation). Dr. Bailey filed several administrative appeals in this case, R. 513, 549, 555, and UHIC summarily denied each for failure to include the patient's written authorization, R. 534, 540-41, 585. Dr. Bailey never attempted to produce the requisite authorization, and Plaintiffs do not dispute that fact. Because it is undisputed that Plaintiffs never filed an *authorized* appeal, UHIC was never required to obtain an expert medical opinion under subsection (h)(3)(iii). *See* R. 95, 302 (requiring "written authorization" from subscriber before benefits may be paid directly to healthcare provider); R. 171, 368 ("Any member or someone that member names to act as an authorized representative may file an appeal."); R. 534-45 (asking provider for additional information regarding patient's authorization and attaching form to designate authorized representative); *cf. Mem'l Hermann Health Sys. v. Sw. LTC, Ltd. Emp. Benefits Plan*, 683 Fed. App'x 274, 275 (5th Cir. 2017) (affirming summary judgment for failure to exhaust where provider never provided patient

authorization as plan administrator requested).[5] Thus, Plaintiffs' argument is without

merit.

### 2. *Plaintiffs fail to establish entitlement to higher reimbursement rates under the plan's language.*

Plaintiffs argue that UHIC's "determination that Dr. Bailey's surgical services

do not meet the definition of 'Emergency Health Care Services' under the plan is

wrong as a matter of law." ECF No. 22 at 6. Given that premise, the Court would

expect some reference to the law in the body of Plaintiffs' argument. But other than

the plan's language explaining "Emergency Health Care Services," R. 56, 262-63,

and Dr. Bailey's operation reports, R. 493-94, 523-25, Plaintiffs cite no legal

authority in support of their second argument. Instead, Plaintiffs insist without

explanation "that Dr. Bailey's surgical services were necessary to 'stabilize or

initiate treatment,'" ECF No. 22 at 6, and "Dr. Bailey's services easily meet the

definitions of Emergency Health Care Services under the plan terms," *id.* at 8. Such

conclusory statements are insufficient to satisfy their burden as moving party.[6]

---

[5] The Court could grant summary judgment against Plaintiffs on the issue of exhaustion alone based on their failure to provide patient authorization for the appeal. *See Mem'l Hermann*, 683 Fed. App'x at 275; *cf. Dialysis Newco, Inc. v. Cmty. Health Sys. Group Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019) ("ERISA does not supply the provider with a basis for bringing its claim directly against the appellants; instead, the provider's standing to bring this lawsuit must be derived from the beneficiary and it is subject to any restrictions contained in the plan."). However, Defendant has not sought summary judgment on that basis.

[6] Plaintiffs preface this argument section with the following disclaimer: "The Court need not address this point, but Plaintiffs are compelled to raise it." *Id.* at 6. The Court agrees this issue need not be decided as Plaintiffs fail to adequately brief it by citing to any relevant legal authority.

Nonetheless, summary judgment is unavailable here because Plaintiffs fail to identify—much less "establish beyond peradventure"—every element necessary for recovery. *Fontenot*, 780 F.2d at 1194. Courts interpret and apply ERISA plan terms in the same manner as a contract. *Green*, 754 F.3d at 331. Terms in an ERISA plan therefore "receive their ordinary and plain meaning unless the contract indicates the parties intended to give the terms a technical meaning." *Angelina Emergency Med. Assocs. P.A. v. Health Care Serv. Corp.*, No. 3:18-CV-0425-X, 2024 WL 102666, at *4 (N.D. Tex. Jan. 9, 2024) (quoting *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005)).

As UHIC correctly points out, ECF No. 25 at 8-10, Plaintiffs never cite or address the actual definitions of "Emergency" or "Emergency Health Care Services" under the plan. R. 120-21, 326-27. Instead, the plan explains at the outset: "Certain capitalized words have special meanings. We have defined these words in Section 9: Defined Terms." R. 44, 252 (italics omitted). The services that fall under the definition for "Emergency Health Care Services" include any "medical screening exam (as required under section 1867 of the Social Security Act, 42 U.S.C. 1395dd)"

---

*See, e.g.*, *Heritagemark, LLC v. Unum Life Ins. Co. of Am.*, No. 4:22-CV-04513, 2024 WL 1078301, at *10 (S.D. Tex. Feb. 8, 2024), *adopted*, 2024 WL 1443179 (S.D. Tex. Mar. 31, 2024) ("Courts have consistently held that inadequate briefing results in a waiver of a party's argument." (quotation omitted)); *New Cingular Wireless, LLC v. City of Brownsville*, No. 1:19-CV-91, 2019 WL 8499340, at *11 (S.D. Tex. Dec. 20, 2019) (denying summary judgment where moving party "failed to adequately brief its arguments, and support them with facts, evidence, or applicable authority").

and "such further medical exam and treatment . . . as are required under section 1867 of the Social Security Act (42 U.S.C. 1395dd(e)(3))." R. 120-121 (italics omitted).[7] In other words, the plan explicitly ties the definition of "Emergency Health Care Services" to services mandated under the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.[8] The plan thus adopts a technical meaning for "Emergency Health Care Services," and Plaintiffs must explain how the surgeries were required under EMTALA. *See Harris Methodist*, 426 F.3d at 334. Plaintiffs' motion is silent. Because Plaintiffs fail to satisfy their initial burden as moving party, their motion for summary judgment must be denied. *See Lozano*, 98 F.4th at 620.

## B.     UHIC Is Entitled to Summary Judgment.

UHIC raises three arguments in support of its cross-motion for summary judgment. First, UHIC contends Dr. Bailey failed to timely appeal its claims decision for the initial surgery on October 1, 2019.[9] UHIC then argues that it committed no error in adjudicating Plaintiffs' claims. Finally, even assuming error, UHIC asserts

---

[7] Although there are slight differences in the language, such as "examination" instead of "exam," the 2018 plan's language is substantially identical. R. 327.

[8] UHIC argues in response that "surgeries to cure or repair a patient's injuries, even when those surgeries are required shortly after the incident, are not emergency medical care" under EMTALA and therefore fall outside of the plan's definition as well. ECF No. 25 at 9-10. Unlike Plaintiffs' briefing, UHIC cites multiple cases in support of this position. *Id.* These arguments are essentially unopposed. However, the Court declines to reach these arguments as Plaintiffs have not met their initial burden as moving party. Defendant's other EMTALA arguments are addressed below.

[9] UHIC does not raise this argument in conjunction with the follow-up surgery, even though the provider remittance advice is dated March 25, 2019, R. 471, and Dr. Bailey appealed some 247 days later, on November 27, 2019, R. 513.

that the plan does not provide for any additional reimbursement. UHIC's briefing is persuasive and amply supported by citation to the record and relevant case law, whereas Plaintiffs fail to squarely respond to UHIC's arguments.[10] UHIC is therefore entitled to summary judgment on Plaintiffs' claims.

### 1.     Dr. Bailey failed to timely appeal UHIC's claims adjudication for the surgery on October 1, 2018.

UHIC argues that Plaintiffs' ERISA claim as it pertains to the first surgery, on October 1, 2018, is barred for failure to timely submit an administrative appeal. ECF No. 21 at 8. UHIC identifies several Fifth Circuit cases strictly enforcing 180-day appeal deadlines in ERISA cases. *Id.* (citing *McGowan v. New Orleans Emp'rs Int'l Longshoremen's Ass'n*, 538 F. App'x 495, 498 (5th Cir. 2013); *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009);

---

[10] Indeed, the Court could strike Plaintiffs' response as untimely, which is "a question of the court's discretion." *McCarty v. Thaler*, 376 Fed. App'x 442, 443 (5th Cir. 2010); *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 895-96 (1990). The Court extended the deadline to file responsive briefing until April 19, 2024, Order, ECF No. 24, yet Plaintiffs waited until April 29, 2024, ECF No. 26. Plaintiffs offer no excuse for the late response. *See* FED. R. CIV. P. 6(b)(1)(B). But even if the Court allowed the untimely response, any impact on the Court's analysis would be negligible because Plaintiffs' two-page response fails to adequately brief any arguments. *See Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 Fed. App'x 146, 151 (5th Cir. 2015) (describing standards for adequate briefing). The only issue Plaintiffs address is the timeliness of Dr. Bailey's first unauthorized appeal. ECF No. 26 at 1-2. Plaintiffs then cursorily insist that UHIC's motion "should be denied for the same reasons that Plaintiffs are entitled to summary judgment on their claim for plan benefits" as stated in their cross-motion. *Id.* at 1. Thus, UHIC's motion is effectively unopposed. Nonetheless, "a district court may not grant a motion for summary judgment merely because it is unopposed." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010). In those situations, "[t]he failure to respond to a summary judgment motion leaves the movant's facts undisputed," meaning the Court's role is to determine "whether those undisputed facts are material and entitle the movant to judgment as a matter of law." *Flowers v. Deutsche Bank Nat'l Tr. Co.*, 614 Fed. App'x 214, 215 (5th Cir. 2015). The Court proceeds with that inquiry below.

*Holmes v. Proctor & Gamble Disability Benefit Plan*, 228 F. App'x 377, 379 (5th Cir. 2007)). The plan here imposes a 180-day appeal deadline. R. 374. UHIC issued an explanation of benefits for the 2018 surgery on May 20, 2019. R. 456-62. UHIC then sent a provider remittance advice to Dr. Bailey on May 20, 2019, R. 472-74, and another one on May 22, 2019, R. 476-77. Plaintiffs' appeal should have been filed no later than November 18, 2019, but Dr. Bailey appealed UHIC's decision on November 27, 2019. R. 482. Thus, Dr. Bailey filed his appeal more than 180 days after the second notification and the appeal is barred as untimely. *See* ECF No. 21 at 4 (calculating that first appeal was filed 188 days after second notification).

Plaintiffs' arguments in response are unpersuasive. Plaintiffs do not dispute that the first appeal was filed after the 180-day deadline or argue whether summary judgment is appropriate on that basis. Instead, Plaintiffs argue that the plan "doesn't require any special language" for an appeal, as "it just has to be in writing and identify the claim being appealed." ECF No. 26 at 2. Plaintiffs insist that Dr. Bailey's "reconsideration request thus constitutes a timely appeal." *Id.* Plaintiffs further argue that because reconsideration was not denied until December 12, 2019, which was after the 180-day deadline, "appealing sooner would not have made any difference." *Id.* Once again, Plaintiffs cite no authority in support of either argument.

Dr. Bailey submitted a "Single Paper Claim Reconsideration Request Form" on May 29, 2019, and attached a one-page letter for reconsideration. R. 626-27. The

following note appears at the top of the form: "Do not use this form for formal appeals or disputes. Continue to use your standard appeals process for formal appeals or disputes." R. 626. Dr. Bailey filed a *formal* appeal on November 27, 2019, which stated that: "This letter shall serve as a first level provider appeal on behalf of Dr. Bailey." R. 482. In other words, Dr. Bailey explicitly disclaimed the arguments Plaintiffs now raise in their response. Plaintiffs' belated attempt to rewrite the administrative record is unavailing. Plaintiffs' ERISA claim as it pertains to amounts UHIC paid for the initial surgery on October 1, 2018, is barred for failure to exhaust all administrative remedies. *See McGowan*, 538 Fed. App'x at 498.[11]

### 2.    *The record does not indicate any emergency existed at the time of the scheduled follow-up surgery on January 15, 2019.*

UHIC argues that it correctly adjudicated the claims for benefits as neither surgery involved a medical emergency. ECF No. 21 at 9-12. Because any ERISA claim for the initial surgery is barred for failure to timely appeal, the Court focuses solely on the follow-up surgery performed on January 15, 2019.[12] As Plaintiffs have

---

[11] UHIC did not deny Dr. Bailey's initial appeal as untimely. Instead, UHIC denied the appeals for both surgeries for failure to include patient authorization. R. 540. Plaintiffs fail to raise this point or explain how the Court's analysis should change as a result. Any arguments Plaintiffs could have asserted are waived. *See Heritagemark*, 2024 WL 1078301, at *10 ("Arguments may be waived where the party fails to adequately brief its arguments, and support them with facts, evidence, or applicable authority." (cleaned up)). Regardless, as Plaintiffs correctly point out, UHIC "does not dispute that, at a minimum, the January 15, 2019 date of service was timely appealed by Plaintiffs." ECF No. 26 at 1 n.1. The Court therefore proceeds to consider UHIC's remaining arguments.

[12] The record is less clear as to whether the initial surgery on October 1, 2018, involved a medical emergency. The primary evidence in the record is Dr. Bailey's surgery report. R. 407-08. Those

not identified any factual disputes, ECF No. 26, the sole question is whether UHIC is entitled to summary judgment as a matter of law, *Flowers*, 614 Fed. App'x at 215. Federal law governs the interpretation of ERISA-regulated plans. *Green*, 754 F.3d at 331. "When construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists." *Id.* (quotation omitted). Courts will not "construe the terms strictly in favor of the insured" under the doctrine of *contra proferentum* unless "the plan terms remain ambiguous after applying ordinary principles of contract interpretation." *Id.* (quotation omitted).

As noted above, the plan's language explicitly incorporates EMTALA. *See* R. 120-21 (defining "Emergency Health Care Services" as such "treatment . . . required under . . . 42 U.S.C. 1395dd(e)(3)" necessary "to evaluate and stabilize an emergency medical condition"). EMTALA defines "emergency medical condition"

---

notes indicate that the patient "was brought to the emergency department for draining an infection following cranioplasty." R. 407. The patient was diagnosed with "[o]pen wound of the scalp, infection of cranium, seizure disorder," and displayed significant "purulent drainage." *Id.* However, nowhere does Dr. Bailey state that an emergency examination was performed, that an emergency medical condition was identified, or that the procedure performed was necessary to stabilize an emergency. The only note relevant to EMTALA is that the patient was "in stable condition" at the end of the operation. R. 408. The preoperative and postoperative diagnoses were otherwise identical. R. 407. In the initial appeal, Dr. Bailey argued that where "the member was initially seen in the emergency room and was admitted for emergency surgery, the procedure at issue was a continuation of care from the initial emergency room visit." R. 483. But argument of counsel is not evidence. Moreover, as Dr. Bailey never filed an authorized appeal, the record lacks any expert testimony or deposition evidence other than the surgery notes. The Court is thus unable to determine on this record whether the initial surgery qualified as emergency medical care under EMTALA and the plan. Because that claim is barred for failure to timely appeal, the Court need not resolve these issues.

as:

> a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in—
>
> (i) placing the health of the individual . . . in serious jeopardy,
>
> (ii) serious impairment to bodily functions, or
>
> (iii) serious dysfunction of any bodily organ or part; . . . .

42 U.S.C. § 1395dd(e)(1)(A); *cf.* R. 120 (similarly defining "Emergency" under the plan). Participating hospitals are then required to screen patients presenting to the emergency department and, if an "emergency medical condition" is found, provide "such treatment as may be required to stabilize the medical condition." 42 U.S.C. § 1395dd(a), (b)(1). EMTALA defines the term "stabilize" as only "such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." *Id.* § 1395dd(e)(3)(A). The Fifth Circuit has clarified that "EMTALA requires only that a hospital stabilize an individual's emergency medical condition; it does not require a hospital to cure the condition." *Monroe v. Mem'l Hermann Health Sys.*, No. 3:19-CV-162, 2022 WL 4543190, at *5 (S.D. Tex. Sept. 28, 2022) (quoting *Green v. Touro Infirmary*, 992 F.2d 537, 539 (5th Cir. 1993)).

Even assuming the initial surgery on October 1, 2018, satisfied EMTALA and the definition of "Emergency Health Care Services" under the plan, the record does

not support any emergency medical condition existing at the time of the January 15, 2019, follow-up surgery. Dr. Bailey's surgery notes never mention the emergency room or any severe symptoms. R. 565-67. Although the patient presented with "wound breakdown," there was apparently "minimal drainage" and "[n]o fevers." R. 535. Rather than presenting with any emergency, as the surgery notes explain: "Patient presents today with 2 open areas of her scalp requesting reconstruction." *Id.* Indeed, the patient requested prior authorization for the follow-up surgery involving "tissue transfer" and "closure of surgical wound," which UHIC granted on January 11, 2019. R. 430. It is thus apparent that the purpose of the follow-up surgery was to *cure* the condition for which the patient initially sought treatment in 2018. Such surgery on an otherwise stable patient is not mandated under EMTALA. *See Green v. Touro Infirmary*, 992 F.2d at 539. For that same reason, the surgery cannot qualify as Emergency Health Care Services under the plan. R. 122 (citing 42 U.S.C. § 1395dd(e)(3)).

UHIC analogizes reconstructive surgery "to repair a previous cranioplasty" with the EMTALA claim dismissed in *MacNeill v. Jayaseelan*, No. 4:14-CV-242-O, 2014 WL 12712420, at *3 (N.D. Tex. Oct. 8, 2014). In that case, the plaintiff presented to an emergency room with "complaints of severe abdominal pain," and emergency screening "recognized the probability of a gastric leak" due to outpatient surgery performed the day before. *Id.* at *1. The plaintiff sued under EMTALA for

failure to "perform emergency surgery to repair the perforation." *Id.* at *3. But the district court dismissed the claim, reasoning that EMTALA only requires hospitals to stabilize the plaintiff's condition, and a "conclusory statement that her condition 'deteriorated' is alone insufficient to support a finding that she was not adequately stabilized." *Id.* (citing *Green v. Touro Infirmary*, 992 F.2d at 539); *cf. Monroe v. Mem'l Hermann Health Sys.*, No. 3:19-CV-162, 2022 WL 4543190, at *5 (S.D. Tex. Sept. 28, 2022) (granting summary judgment on EMTALA claim where necessity of surgery to remove kidney stone was undisputed, but plaintiff offered no evidence that option of "outpatient surgery" likely risked any "material deterioration of her condition"). As the patient here reported no pain or fevers at the time of surgery, UHIC contends that "the surgery at issue in this case was less urgent than those performed in *MacNeill* and *Monroe*, where the patients faced life-threatening consequences if they did not undergo surgery." ECF No. 21 at 12. Further, UHIC states that it could not locate any case where a court "has ever held that reconstructive surgery following a previous operation is emergency health care" under EMTALA. *Id.*

Plaintiffs never directly respond to UHIC's arguments. *See* ECF No. 26. In their cross-motion, the only evidence Plaintiffs cite in support of an emergency is Dr. Bailey's surgery notes indicating the patient "was suffering an 'open wound of the skull and scalp with exposed prosthetic mesh.'" ECF No. 22 at 8 (quoting

R. 523). Plaintiffs insist that "Dr. Bailey's services were necessary to 'stabilize or begin treatment in an Emergency.'" *Id.* (quoting R. 56). But such conclusory arguments are incapable of creating a genuine dispute of material fact. *See Monroe*, 2022 WL 4543190, at *5; *MacNeill*, 2014 WL 12712420, at *3. Because Plaintiffs identify no evidence of an emergency on January 15, 2019, no stabilizing surgery was necessary under EMTALA or the plan, and summary judgment is appropriate.

### 3. *Even assuming both surgeries qualified as emergency health care services, Plaintiffs do not contest whether they are entitled to additional reimbursement amounts.*

As their final argument, UHIC contends that Plaintiffs' ERISA claim must be dismissed as they are not entitled to any additional reimbursement under the plan. ECF No. 21 at 12-14. Plaintiffs' entire theory for its ERISA claim focuses on a single clause in the plan's schedule of benefits explanation:

> For Emergency Health Care Services and Emergency ambulance transportation provided by an out-of-Network provider, the Allowed Amount is a rate agreed upon by the out-of-Network provider or determined based upon the higher of:
>
> - The usual, reasonable or customary amount;
>
> - The median amount negotiated with Network providers for the same service; or
>
> - 110% of the published rates allowed by the Centers for Medicare and Medicaid Services (CMS) for the same or similar service within the geographic market.

R. 40, 247; ECF No. 10 ¶ 22. The term "usual, reasonable or customary amount" for medical services is not defined in the plan. UHIC states that it "paid median network

rates for the October 1, 2018, treatment, and Medicare rates for the January 15, 2019 treatment." ECF No. 21 at 14. Plaintiffs do not contend otherwise.[13] Instead, the only question is whether "usual, reasonable or customary rates" means FAIR Health rates.

UHIC argues that it is entitled to summary judgment because "Plaintiffs point to no definition of 'usual and customary rate' that supports [their] interpretation." ECF No. 21 at 13. In contrast, UHIC attaches briefing from the Texas Department of Insurance in a separate case taking the position that the term "usual and customary rate" has traditionally been interpreted as allowing insurers to "set their payment amounts at their discretion." *Id.*; ECF No. 21-7 at 22.[14] UHIC further cites provisions of the Texas Insurance Code defining the term "usual and customary rate" in other contexts as the plan's prescribed "allowable amount" rather than being "based on provider charges or third-party benchmarks." ECF No. 21 at 14 (citing TEX. INS. CODE §§ 1551.003(15), 1575.002(8), 1579.002(8)).[15] Accordingly, because "it is not

---

[13] UHIC apparently notified Dr. Bailey in a provider remittance advice dated March 25, 2019, that it would reimburse out-of-network services based on Medicare allowed amounts for surgery on January 15, 2019. R. 471. Similar notices for the services provided on October 1, 2019, indicate that the out-of-network rates were based on cost data provided by Data iSight. R. 474. Regardless, Plaintiffs do not contest this issue or assert any other theory of ERISA violation.

[14] The attached briefing pertains to interpreting Texas statutes applicable to health maintenance organizations and exclusive provider benefit plans. *See* ECF No. 21-7 at 20-21 (citing TEX. INS. CODE §§ 1271.055, 1301.0052-.0053). With slight variation, each of those statutes require plans to "fully reimburse the nonpreferred provider at the *usual and customary rate*" for emergency care. TEX. INS. CODE § 1301.0052(a)(2) (emphasis added). UHIC does not argue that any of the cited statutes are applicable in this situation.

[15] *See, e.g.*, TEX. INS. CODE § 1551.003(15) ("'Usual and customary rate' means the relevant allowable amount as described by the applicable master benefit plan document or policy.").

disputed that UHIC paid the allowable amount for an out-of-network provider," UHIC insists that Plaintiffs "would not be entitled to any additional amounts" even if the surgeries qualified as emergency medical care. *Id.*

Although UHIC has identified no cases interpreting the exact phrase "usual, reasonable or customary amount" in the ERISA context, the Court is satisfied that UHIC has met its initial burden as the moving party to come forth with evidence undermining a key element of Plaintiffs' claim. *See Fontenot*, 780 F.2d at 1194. Because Plaintiffs ultimately bear the burden of proof on their ERISA claim, *see Perdue*, 7 F.3d at 1254 n.9, the burden shifts to Plaintiffs to identify any authority that supports their preferred interpretation of the plan's language. This is undoubtedly a low hurdle, and yet Plaintiffs supply no counterargument.

Plaintiffs' sole claim under ERISA is that UHIC was required to reimburse Dr. Bailey using "the usual, reasonable or customary rate" for the provided surgeries. ECF No. 10 ¶ 35. Plaintiffs allege that "FAIR Health charge data is the gold standard for determining the usual and customary amount for healthcare services in a particular geographic area." *Id.* ¶ 24 (footnote omitted). Plaintiffs purportedly cite amounts corresponding with "the 90th percentile of FAIR Health charge data" for the Houston area. *Id.* ¶¶ 24-25. Dr. Bailey likewise cited purported FAIR Health

rates in support of each appeal letter.[16] In their cross-motion, Plaintiffs argue that they "explained in their appeal letters to UHIC that FAIR Health rates are the best evidence of the usual, reasonable, or customary amount." ECF No. 22 at 4 (footnote omitted). Plaintiffs' two-page response never mentions this argument. ECF No. 26.

It is well-established that "argument of counsel is not evidence." *United States v. Thomas*, 627 F.3d 146, 158 (5th Cir. 2010); *accord United States v. Ceballos*, 789 F.3d 607, 625 (5th Cir. 2015); *Stealth Onsite Sols., LLC v. M/V Double E*, No. 2:23-CV-00175, 2023 WL 9604477, at *8 (S.D. Tex. Dec. 28, 2023), *adopted*, 2024 WL 554162 (S.D. Tex. Feb. 9, 2024). Aside from Plaintiffs' *ipse dixit*—whether in their cross-motion, pleadings, or the appeal letters from counsel in the record—Plaintiffs never cite a *single* authority in support of the contention that FAIR Health data is reliable, relevant, or appropriate in this context. Plaintiffs have attached no evidence to back up their demands for additional payment. Plaintiffs identify no cases applying FAIR Health data in the ERISA context or any context. Plaintiffs fail to even supply a URL for the FAIR Health website or at least some methodology for how they determined that the 90th percentile is a "reasonable" rate. Plaintiffs fail to

---

[16] In the initial administrative appeal, Dr. Bailey stated that the patient was billed $54,784.00 for the surgery on October 1, 2018, alongside a purported "Fair Health" total of $45,781.00. R. 483, 497. In Plaintiffs' amended complaint, this amount increased to $54,045.77. ECF No. 10 ¶ 24. For the follow-up surgery on January 15, 2019, Dr. Bailey apparently billed $47,310.00, while contending that the FAIR Health total that should have been reimbursed was $35,175.00. R. 514; ECF No. 10 ¶ 25. Dr. Bailey fails to explain in any appeal how FAIR Health is relevant.

support their claim with any competent summary judgment evidence. Contrary to Plaintiffs' argument that FAIR Health is reliable, it appears the opposite is true, as federal courts have routinely excluded as unreliable expert testimony based on FAIR Health data to determine the "usual, customary, and reasonable" rates for medical services. *Manuel v. Protective Ins. Co*., No. CV 22-3194, 2023 WL 7170385, at *2 (E.D. La. Oct. 31, 2023) (collecting cases).

Due to Plaintiffs' lack of evidence or any cogent argument in opposition, the Court has no choice but to grant summary judgment in favor of UHIC. Plaintiffs' deficient briefing fails to rebut any of UHIC's summary judgment arguments. *See Heritagemark*, 2024 WL 1078301, at *10; *New Cingular*, 2019 WL 8499340, at *11.

## IV.   CONCLUSION

For those reasons, the Court **RECOMMENDS** that Plaintiffs' motion for summary judgment, ECF No. 22, be **DENIED**. The Court further **RECOMMENDS** that UHIC's motion for summary judgment, ECF No. 21, be **GRANTED**.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error.** ***Ortiz v. San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

**IT IS SO ORDERED.**

Signed on July 31, 2024, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**